IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DIANA RILEY, | ) | CIVIL ACTION NO. 9:14-3229-DCN-BM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on December 2, 2010 (protective filing date), alleging disability beginning April 1, 2009, due to degenerative disc disease, spinal stenosis, depression, diabetes, and macular degeneration. (R.pp. 12, 59, 151). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 16, 2013. (R.pp. 37-90). The ALJ thereafter denied Plaintiff's claim in a decision issued March 1, 2013. (R.pp. 12-24). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).



Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or reversed outright for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**Discussion**

A review of the record shows that Plaintiff, who was fifty-nine years old on the date she alleges she became disabled and sixty-two years old at the time she was last insured for DIB,[1] has a high school education and past relevant work experience as a customer complaint clerk, order clerk, secretary, and store manager. (R.pp. 18, 22, 120, 152). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of obesity, degenerative disc disease, back pain, status post total left knee replacement, status post right knee arthroscopy, and bilateral leg and knee pain (R.p. 15), she nevertheless retained the residual functional capacity (RFC) to perform sedentary work[3] with limitations of only occasionally climbing ramps/stairs, balancing, and stooping;

---

[1]Plaintiff's last date insured for DIB was December 31, 2011. (R.p. 14). Therefore, in order to obtain benefits, Plaintiff must show that her impairments were or became disabling by that date. See 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005).

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[3]Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and (continued...)



never climbing ladders, ropes, or scaffolds; never kneeling, crouching, or crawling; and avoidance of concentrated exposure to extreme cold, vibrations, and hazards, such as machinery and heights. (R.p. 17). At step four, the ALJ found that Plaintiff was not disabled because these limitations did not render her capable of performing her past relevant work as an order clerk or a complaint clerk as actually performed by the claimant and as generally performed in the economy, or as a secretary or purchasing agent as generally performed in the economy. (R.p. 22).

Plaintiff asserts that in reaching this decision, the ALJ erred because she refused to allow significant cross-examination of the VE; failed to find that Plaintiff's macular degeneration, mental impairments, diabetes, and foot problems were severe impairments; improperly discounted the opinion of treating physician Dr. Stacy J. Gajewski; erred in her analysis of Plaintiff's RFC; and erred in finding that Plaintiff's symptoms were not credible. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.  Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

### **Medical Records**

Plaintiff's medical records reflect that, prior to her alleged onset date of disability, she had been receiving treatment for diabetes (R.pp. 50, 517), depression (R.pp. 53, 517), coronary artery disease (R.pp. 350-358), macular degeneration (R.pp. 335-340, 342-343, 517), and a knee impairment

---

[3](...continued)
other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

4



(which included a left knee replacement in 2004). (R.pp. 490, 497, 649). Plaintiff does not herself contend that these impairments were disabling during this period of time; therefore, in order to obtain DIB, Plaintiff must show that her condition deteriorated substantially by on or after her alleged disability onset date from what these records show. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

From her alleged onset of disability date (April 1, 2009) until approximately May 2011, Plaintiff received regular treatment at Three Rivers Internal Medicine for diabetes, diffuse pain, low back pain, difficulty sleeping, depression, anemia, edema, and coronary artery disease (R.pp. 377-398). On March 3, 2009, several weeks after a motor vehicle accident, Plaintiff complained to Dr. David R. Kingery (an orthopedist) about front left knee pain and left buttock pain which radiated down her foot. Meloxicam was prescribed and Plaintiff was sent for physical therapy for lumbar stabilization. (R.p. 644). In May 2009, Plaintiff reported to Dr. Kingery that her right knee was "catching," and an MRI showed torn ligaments. (R.pp. 489, 493-494). Arthroscopic right knee surgery was performed, she was directed to perform a series of home exercises, and she had followup appointments in June and July 2009. (R.pp. 481-482, 492, 486-487).

Upon referral from Dr. Kingery, Plaintiff was examined by Dr. Theodore Faber (a neurologist) on August 28, 2009. Plaintiff had tenderness to percussion of her lower lumbar and upper sacral regions, but no other abnormalities. Examination revealed 5/5 (full) muscle strength, normal sensation and reflexes, a normal gait, and an ability to tandem walk. MRIs of Plaintiff's spine revealed a broad-based disc protrusion at L2-3 with mild to moderate stenosis, and a mild disc bulge at L4-5. (R.pp. 461-462, 593-594, 646-650).



Plaintiff complained of low back pain to Dr. William Rambo, a neurologist, on October 14, 2009. Examination was normal except for some weakness when Plaintiff stepped on a stool with her left leg. Dr. Rambo noted that Plaintiff's MRIs indicated stenosis at L2-3, and a probable upper lumbar radiculopathy on the left. He did not recommend surgery, and referred Plaintiff for physical therapy. (R.pp. 364-365, 458-459). Thereafter, physical therapy notes from October 2009 to March 2010 show that Plaintiff tolerated therapy with minimal complaints of pain, and even failed to show for six of her appointments during that time period. (R.pp. 271-331, 371-375).

In February 2010, Plaintiff complained about painful hyperkeratosis (thickening of the skin) to Dr. Paul Bearden, a podiatrist who had previously treated Plaintiff in 2008 (R.pp. 687-689). He performed partial thickness debridement of the skin on her foot and noted that she was a good candidate for diabetic shoes. (R.p. 686).

Dr. Jeffrey Gross, an ophthalmologist with the Carolina Retina Center, requested that an optometrist check Plaintiff's glasses and refraction due to decreased vision on April 12, 2010. He wrote that although Plaintiff was in a clinical study for macular degeneration, she retained 20/20 vision previously. Dr. Gross noted that Plaintiff's visual acuity had decreased to 20/25, but her macular degeneration did not look any different, and no fluid, hemorrhage, or exudation was seen on examination. (R.p. 341).

On April 23, 2010, Plaintiff was examined by Dr. J. Talley Parrott, an orthopedist. Plaintiff reported that she was "doing a little bit better" following physical therapy, water exercise, and weight loss. Examination revealed restricted motion and increased pain with extension of Plaintiff's back, good motion of her hips, grossly normal neurological examination of her lower extremities, and possible spiking decreased sensibility in her feet. Dr. Parrott diagnosed symptomatic



disc degeneration of Plaintiff's lumbar spine, spinal stenosis, and probable diabetic neuropathy, but thought she was "on the right track with physical therapy and exercise" and saw no reason for further intervention. (R.pp. 456-457). On August 11, 2010, Dr. Bearden performed another partial thickness debridement of the skin on Plaintiff's foot, and again recommended that Plaintiff be fitted for diabetic shoes. (R.p. 685).

On November 22, 2010, Dr. Elizabeth Patrick at Three Rivers Internal Medicine declined Plaintiff's request to provide a letter stating that Plaintiff could not work (so that Plaintiff could file for disability), writing that she did not do disability evaluations and that Plaintiff would need to discuss this with Dr. Rambo. (R.p. 588).

Plaintiff was treated by Dr. Gajewski with Saluda Pointe Family Medicine on February 7, 2011. Plaintiff reported she had lost 70 pounds on her diet, had been able to decrease her dosage of Metformin for diabetes, and used no regular medication for pain control. She also reported she recently tripped and bruised her right knee. Dr. Gajewski observed that Plaintiff's gait was slow, she used a cane, and her balance was fairly good. It was noted that periodic infusions controlled Plaintiff's anemia. Although Plaintiff reported confusion, memory problems, and fatigue, it was thought that these symptoms were due to her low hemoglobin level. (R.pp. 595-596).

On February 15, 2011, Plaintiff returned to Dr. Kingery for the first time since July 2009, complaining of right knee pain after a recent fall. (R.p. 485). On March 14, 2011, Plaintiff reported intermittent giving way of her right knee. Plaintiff declined to use a cane, and Dr. Kingery encouraged Plaintiff to continue an ongoing strengthening program and to return if she did not see gradual improvement over the next six to eight weeks. (R.p. 496). On April 7, 2011, Dr. Bearden pared a benign lesion of Plaintiff's foot. (R.p. 684).

7



Dr. Thomas Motycka performed a consultative examination on May 5, 2011. He found that range of motion testing as to Plaintiff's cervical spine, shoulders, elbows, wrists, hips, and ankles was normal; straight leg raise testing was negative; Plaintiff's knees were non-tender with normal extension and flexion of 120 degrees; and hand examinations were normal. Although Plaintiff had a lot of trouble tandem walking because of her obesity, she was able to do so after practicing. Further, she did not have problems with heel-toe walking, and was able to perform a shallow squat with the assistance of the exam table to rise. Plaintiff had no gait disturbance, and did not use an assistive device to ambulate. Muscle strength testing was +5/+5, she had no sensory loss; reflex testing was symmetric at +2/+4; and there was no area of atrophy. Lumbosacral spine radiograph showed some lower thoracic vertebrae with anterior osteophyte formations, but she had an essentially normal lumbosacral spine with normal intevertebral heights and a wide open neuroforamen. Left knee x-ray showed a well-positioned total knee prosthesis, and right knee radiograph showed some loss of joint compartment space and some degenerative changes. Dr. Motycka noted that Plaintiff had fairly well-controlled fasting glucose and had been able to decrease her use of diabetic medication over the last year; had been taking some form of antidepressant medication for approximately twenty years; and was in a study for her macular degenerative degeneration. While she had degenerative disc disease and spinal stenosis with complaints of pain, her range of motion was normal and symmetric and she had a normal gait. (R.pp. 517-522).

Plaintiff also had a consultative eye examination performed by Dr. Walt Bogart, an ophthalmologist, on May 11, 2011. He noted that Plaintiff had normal visual field testing and useful binocular vision in all directions, and that despite the presence of macular degeneration and early



cataracts, Plaintiff "currently [had] excellent vision". Dr. Bogart opined that Plaintiff did not need to take any vision related precautions for employment. (R.p. 533).

At Three Rivers Internal Medicine on May 12, 2011, Plaintiff complained of nausea and that her legs and arms were warm to the touch and tight with prickly and tingling. However, examination was generally normal except for some monofilament decreased sensation on Plaintiff's feet. (R.pp 654-655).

On May 24, 2011, state agency physician Dr. Michael Perll opined that Plaintiff could lift and carry ten pounds occasionally and twenty pounds frequently; should never balance; and could occasionally perform postural maneuvers. (R.pp. 540-547). That same day, state agency psychiatrist Dr. Stanley W. Golon found insufficient evidence of a mental impairment. (R.pp. 548-558).

On June 1, 2011, Dr. Gajewski, then at Lake Murray Family Medicine, noted that Plaintiff was in the process of transferring from Three Rivers Internal Medicine. It was noted that Plaintiff was fairly well appearing at rest, but had quite a bit of difficulty with any type of ambulation or change in position. Plaintiff's diabetes had an A1C of 5.9, and it was recommended that she should continue taking Metformin. Although it was noted that Plaintiff reported mental confusion, this was thought to be due to a sudden drop in hemoglobin. (R.p. 595). Thereafter, diabetic shoes with custom molded diabetic insoles were dispensed by Dr. Bearden's office in July 2011; (R.p. 683); and Dr. Gajewski treated Plaintiff for acute bronchitis on September 12, 2011. (R.p. 699).

A consultative mental status examination was performed by Dr. Robert D. Phillips, a psychologist, on September 21, 2011.[4] Plaintiff reported poor memory, sadness, and anxiety related

---

[4]It is noted in the record that Plaintiff had failed to attend an earlier scheduled mental consultative examination. (R.p. 559).



to finances and problems with her husband.  However, her mini-mental state examination was normal, Plaintiff's mental awareness appeared to be good, her estimated IQ was in the average range, and her long term memory appeared to be fair.  Dr. Phillips diagnosed anxiety disorder, depressive disorder, and partner relational problems.  (R.pp. 605-607).

On September 26, 2011, Plaintiff reported to Dr. Gajewski that her sugars had been doing well; she was still having some back pain but was again doing fairly well, and her moods were doing "ok," but with some problems.  She was assessed with acute bronchitis which was not improving, diabetes controlled on Metformin 500 mg. once a day, and doing "well enough" on Zoloft (for her mental condition).  (R.p. 698).  An MRI of Plaintiff's lumbar spine on September 29, 2011 showed mild to moderate bilateral foraminal stenosis.  (R.p. 700).

On September 29, 2011, state agency psychologist Dr. Samuel Goots opined that Plaintiff did not have a severe mental impairment.  (R.pp. 609-622).  State agency physician Dr. William Lindler opined on October 7, 2011, that Plaintiff could lift and carry up to ten pounds and less than ten pounds occasionally; could never climb ladders, ropes, or scaffolds; could never kneel, crouch, or crawl; could occasionally climb ramps and stairs, balance, and stoop; and should avoid concentrated exposure to extreme cold, vibration, and hazards.  (R.pp. 623-630).

On January 9, 2012 (which was now after Plaintiff's eligibility of DIB had expired), Dr. Gajewski noted that Plaintiff had no problems with neuropathy; changed Plaintiff's medication to Celexa based on Plaintiff's mood swings; and referred Plaintiff back to a specialist for knee pain. (R.p. 696).  Dr. Gajewski noted that Plaintiff's A1C had decreased from 6.2 to 5.9 on April 23, 2012, and that Plaintiff's mood swings were doing well on Zoloft.  It was reported that Plaintiff's neuropathy was worse, but Plaintiff had been off Lyrica, so Lyrica was to be restarted.  (R.p. 694).



# I.

## (Severe Impairments)

Plaintiff initially asserts that the ALJ erred by failing to find that her macular degeneration, psychological problems, diabetes, and foot problems were severe. However, the ALJ discussed each of these impairments and set forth her reasons for determining that they were nonsevere impairments; (R.pp. 15-17); and the undersigned can discern no reversible error in the ALJ's step two analysis.

The ALJ noted that Dr. Gross reported that Plaintiff had age-related macular and peripheral degeneration of both eyes that did not require specific treatment, that Plaintiff's visual acuity with correction was 20/25 in each eye in April 2010, and that her macular degeneration was noted to be stable with no complications such as hemorrhage or exudation. (R.p. 15). Further, examination in May 2011 indicated that visual field testing was normal, Plaintiff's best correction was 20/20 in both eyes for distance and 20/30 R, 20/25L for reading, she had useful binocular vision in all directions, and her color perception was normal. Dr. Bogart specifically noted that Plaintiff currently had excellent vision and no types of activity or working conditions that needed to be avoided, while the "Remarks" section of the report indicated Plaintiff had early signs of advanced macular degeneration, but with no symptoms; only early cataracts, and no diabetic retinopathy. (R.pp. 532-533). See generally, Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

The ALJ's determination that Plaintiff's psychological problems were not a severe impairment is also supported by substantial evidence. The ALJ evaluated the severity of Plaintiff's



mental impairments using the special technique outlined in the regulations; <u>see</u> 20 C.F.R. § 404.1520a; to conclude that this impairment did not result in more than minimal limitations. (R.pp. 15-17). The record indicates that although Plaintiff was prescribed medication by her primary care physician, she did not require any further treatment. An unidentified (the signature is illegible) Saluda Pointe Family Medicine physician stated in August 2011 that no medication was prescribed and no psychiatric care was recommended for Plaintiff's allegations of memory problems, and it was noted that Plaintiff was oriented; her mood/affect was normal; and her attention, concentration, and memory were adequate. (R.p. 573). Treating physician Dr. Gajewski opined in September 2012 that Plaintiff had unlimited ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions; carry out detailed but uncomplicated job instructions; and carry out simple one- or two-step job instructions. She also had unlimited ability to interact with supervisors and coworkers; deal with the public; and maintain concentration and attention. (R.p. 672). Consultative psychologist Dr. Phillips diagnosed Plaintiff with anxiety disorder, depressive disorder, and partner relational problems, but he placed no functional limitations on Plaintiff's ability to work; (R.p. 607);[5] while state agency psychologist Dr. Goots found that Plaintiff did not have a

---

[5]Although Plaintiff argues that the VE "specifically agreed that given Dr. Phillips' exam as a whole, Plaintiff would not be able to perform any of her past relevant work. R-83;" <u>see</u> <u>Plaintiff's</u> <u>Reply Brief</u>, ECF No. 15 at 6; a review of the VE's testimony fails to support this contention. Plaintiff's counsel asked the VE to assume that the consultative examination of Dr. Phillips indicated Plaintiff had reduced memory and elevated anxiety and stress, and further asked to VE to assume that Dr. Phillips' findings meant that Plaintiff's symptoms prevented "reliable discretionary decision making, and dealing–also prohibits dealing with increased, by phone or in person on a reliable and consistent basis." In response to these assumptions, the VE stated that none of the identified past relevant work would be available. (R.p. 83). However, the assumption that these symptoms would prevent reliable decision making and dealing with persons on a reliable and consistent basis are Plaintiff's counsel's conclusions, not those of Dr. Phillips. Although Dr. Phillips assessed Plaintiff with depressive disorder, anxiety disorder, and partner related problems, he did not assess her with
(continued...)



severe mental impairment.  (R.pp. 609-622).  <u>Richardson v. Perales</u>, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

With respect to the ALJ's determination that Plaintiff's diabetes and related foot problems were not  severe impairments, the ALJ noted that Plaintiff had been fitted for diabetic shoes; that her diabetes was effectively controlled with medication; she denied polyuria or peripheral neuropathy and noted only intermittent foot pain without radiation, which was alleviated with rest; she denied having any swelling, weakness with weight bearing or walking, redness, decreased sensation, ulcerations, or deformity; and she had an normal gait.  (R.p. 15).  At the consultative examination with Dr. Motycka in May 2011, Plaintiff denied having peripheral neuropathy or polyuria related to diabetes; (R.p. 517); and her diabetes was consistently noted to be controlled or stable by her medical providers.  (R.pp. 382, 386, 391, 397-398- 517, 654).  Further, during the relevant time period, Plaintiff required less diabetic medication after losing 70 pounds.  (<u>See</u> R.p. 596).  Although Plaintiff had foot problems that were treated by a podiatrist and she received special diabetic shoes, Dr. Bearden did not place any limitations on Plaintiff's ability to work.  <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessments

_____

[5](...continued)
reduced memory.  Dr. Phillips noted Plaintiff's complaints of poor memory and thought that Plaintiff's reported elevated levels of anxiety might explain her reduced memory, but he found that her thought processes appeared to be normal, her short term memory appeared to be fairly good, and her long term memory appeared to be fair.



of examining physicians]. Further, any limitations from Plaintiff's foot problems appear to have been accommodated in the RFC determination with a limitation to sedentary work.

In sum, the ALJ's determination that these impairments were non-severe is supported by substantial evidence in the case record. Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Bowen, 482 U.S. at 140-142 [To be "severe", an impairment must significantly limit a claimant's ability to do basic work activities]. Further, although the ALJ did not find that Plaintiff's macular degeneration, psychological problems, diabetes, or foot problems were severe at Step Two, she found other impairments to be severe and continued the sequential evaluation process during which she also discussed the evidence concerning the nonsevere impairments. See, e.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); Washington v. Astrue, 698 F.Supp.2d 562 (D.S.C. 2010). Thus, Plaintiff's contention that the ALJ's failure to find her macular degeneration, psychological problems, diabetes, and foot problems to be severe impairments at Step Two constitutes reversible error is without merit.

## II.

### (Treating Physician)

On September 12, 2012 (more than nine months after Plaintiff's last date insured), Dr. Gajewski completed a form titled "Residual Functional Capacity Assessment" in which she opined that Plaintiff could lift less and/or carry less than ten pounds; could frequently lift and/or carry less than ten pounds; could stand and/or walk a total of less than two hours in an eight hour day; could sit for a total of less than six hours in an eight-hour day; could never climb, balance, stoop, kneel, crouch, or crawl; was limited as to reaching; was limited as to seeing due to moderate macular



degeneration; had no environmental restrictions; and had to use a cane for stability much of the time. Dr. Gajewski based these restrictions on an MRI showing degenerative disc disease with mild to moderate stenosis and because Plaintiff "is being sent to a pain specialist for treatment." (R.pp. 670-672). Plaintiff contends that the ALJ rejected Dr. Gajewski's opinion because she could not read Dr. Gajewski's signature, improperly rejected the opinion by stating that a treating physician's opinion of disability can never be entitled to controlling weight, and failed to explain why she did not give greatest weight to the opinion. Plaintiff's Brief, ECF No. 13 at 21. However, the undersigned can discern no reversible error in the ALJ's treatment of this evidence.

Although the ALJ noted that the September 12, 2012 opinion had an illegible signature, she nonetheless treated it as an opinion from Plaintiff's "treating physician" at Lake Murray Family Medicine, further correctly noting the importance of such an opinion. (R.pp. 21-22). See Craig v. Chater, 76 F.3d at 589-590 [Noting importance of treating physician opinion]. Additionally, while the ALJ did note that a determination of whether an individual is "disabled" or "unable to work" is reserved to the Commissioner and statements that a claimant is disabled are therefore not given any special significance as to the issue of disability, this was simply a correct statement of the applicable law and standard, and there is nothing reversible about this finding. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(d) ["a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].



The ALJ also specifically stated that she gave the September 2012 opinion little weight because "the evidence as a whole, including the clinical findings and observations, laboratory findings, and claimant's daily activities does not support the above noted limitations." (R.p. 22).[6] This finding is supported by substantial evidence in the case record, as the medical records, including records from the specialists in neurology and orthopedics, as well as Plaintiff's primary care providers all as discussed and analyzed in the decision, generally reflect unremarkable physical examinations and routine, conservative care. (R.pp. 15-21); see also  Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) [". . . What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability].  Further, during the relevant time period surgery was not recommended and Plaintiff was treated with medications and physical therapy, while  Dr. Faber found that Plaintiff had full muscle strength, normal sensation and reflexes, and a normal gait.  (R.p. 650).  Additionally, although Plaintiff argues her treatment records with pain specialist Dr. William Odom are supportive of her claim, this physician did not examine

---

[6]The Commissioner also argues that the ALJ reasonably weighed the medical opinion evidence based on Dr. Gajewski having provided the opinion nine months after Plaintiff's date last insured and that her opinion does not relate back to the relevant time period.  However, although a box on the form was checked indicating that it was a current evaluation, there is also a handwritten note stating "and since treatment began." (R.p. 670).  As such, the time to which the opinion relates is somewhat ambiguous because it is unclear to what time "since treatment began" refers, but to the extent that it relates to the date Dr. Gajewski began seeing the Plaintiff, that appears to be February 2011.



Plaintiff until September 26, 2012, more than nine months after Plaintiff's date last insured. (R.pp. 718-720).

With respect to Dr. Gajewski's statement in September 2012 that Plaintiff must use a cane for stability much of the time, the record reflects that although Plaintiff used a cane at her appointment with Dr. Gajewski on February 7, 2011, shortly after she had tripped and bruised her knee, by her March 14, 2011 appointment with Dr. Kingery, Plaintiff declined to use a cane. (R.p. 496). She also walked without an assistive device during her consultative examination by Dr. Motykca in May 2011. (R.p. 520).

Medical records from Lake Murray Family Medicine (which consist of treatment notes from Dr. Gajewski) from the time prior to and shortly after Plaintiff's date last insured (R.p. 595, 573, 699, 694) also fail to support the limitations found by Dr. Gajewski in her September 2012 opinion. Plaintiff argues that all of the records from Saluda Pointe Medicine, where Dr. Gajewski appears to have examined Plaintiff on only one occasion before transferring her practice to Lake Murray Family Medicine, support Dr. Gajewski's September 2012 opinion; however, those records indicate that Plaintiff had been able to decrease her dosage of Metformin for diabetes and used no regular medication for pain control. While Plaintiff was using a cane due to a recent bruise to her knee (from a recent incident in which she tripped), her anemia was controlled, and the confusion, memory problems, and fatigue Plaintiff complained about at that time were thought to be due to a low hemoglobin level. (R.pp. 595-596). Records from another provider at at Saluda Pointe Family Medicine indicate that Plaintiff was treated for a cooking burn on August 1, 2011 (p. 587). Further, although Plaintiff complained to Dr. Patrick of dizziness and back pain on November 22, 2010, and that she could not do her "Pampered Chef" parties anymore because of her back pain, she also



admitted that the "[p]ain [was] not bad enough to have surgery, [it] just stops me from doing daily tasks like I want to." When she requested a letter stating that she could not work, Dr. Patrick declined to give her one. (R.p. 588).

The ALJ's decision to discount Dr. Gajewski's opinion is also supported by the consultative examination of Dr. Motycka, who found generally normal range of motion testing, and that Plaintiff had no gait disturbance, full muscle strength, no sensory loss, symmetric reflexes, and no atrophy. Cf. Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. He also did not place any limitations on Plaintiff's ability to work. (R.pp. 517-522).

Finally, the ALJ's discounting of Dr. Gajewski's opinion is also supported by the opinions of the state agency physicians, both of whom opined that Plaintiff could perform a range of sedentary or light work. (R.pp. 548-558, 623-30). See Johnson, 434 F.3d at 657 [ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004)[disagreeing with argument that ALJ improperly gave more weight to RFC assessments of non-examining state agency physicians over those of examining physicians]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."].

In sum, after careful review of the record, the undersigned can find no reversible error in the ALJ's treatment of Dr. Gajewski's September 2012 opinion. The ALJ properly discounted this



opinion because it was not supported by the evidence as a whole (R.p. 22).  Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].  This argument is without merit.

## III.

## (Credibility)

With respect to Plaintiff's contention that the ALJ committed reversible error in her evaluation of Plaintiff's subjective testimony and credibility, this argument is also without merit.  The ALJ specifically discussed Plaintiff's testimony, but while concluding that Plaintiff did have medically determinable impairments that could reasonably be expected to cause the symptoms she alleged, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent inconsistent with the RFC set forth in the decision.  ( R.pp. 18, 20-21).  In reaching this conclusion, the ALJ noted the medical records and Plaintiff's testimony and stated that she made her decision "based on a consideration of the entire case record."  (See R.pp. 17-21).  That is exactly what the ALJ is supposed to have done.  See SSR 96–7p, 1996 WL 374186, at *2 [Where a claimant seeks to rely on subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles v. Shalala, 29 F.3d 918,



925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Further, when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d at 595 ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant."](citing SSR 96-7p); Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

The ALJ in this case found that Plaintiff was not entirely credible based on minimal objective evidence which failed to demonstrate any herniation or nerve root impingement that would result in the degree of severe and debilitating back pain alleged by Plaintiff; noted that although the Plaintiff might experience bilateral knee pain, there was no evidence of hardware failure in Plaintiff's replaced left knee or any instability in Plaintiff's knees bilaterally; and noted that although Plaintiff's obesity could exacerbate her back and lower extremity pain, her obesity had not resulted in severe



cardiovascular complications, and had not markedly limited her ability to function or perform routine activities within a work environment. The ALJ also discounted Plaintiff's credibility based on her activities of daily living, which were not indicative of an individual who had severe functional limitations. (R.pp. 20-21).

Plaintiff contends that the ALJ mischaracterized her activities of daily living. However, although Plaintiff points to some qualifications as to her activities as reported in the function reports, the ALJ cited to and discussed substantial evidence in support of her decision. For example, the ALJ specifically noted that Plaintiff reported to her physical therapist that she babysat her ten-month old grandchild two to three nights a week. (R.pp. 20, 272, 311). Function reports indicated that Plaintiff was able to attend church regularly, prepare light meals, grocery shop, use a computer and phone, and handle finances, although she reported some limitations and pain as to those activities. (R.pp. 20, 138, 140-142, 199, 201-203). At the hearing, Plaintiff testified that she drove three times a week, attended church and Bible study, grocery shopped, washed dishes, and did laundry. (R.p. 20, 43, 55, 57). The ALJ also noted that Plaintiff reported to Dr. Phillips that she was able to drive, take care of young children (although it had become more difficult), manage her personal care, do household chores, prepare meals, go shopping, manage her finances, and watch television. (R.pp. 16, 606). Cf. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations]. At the hearing, Plaintiff stated she stopped working in 2006 because she moved to South Carolina; (R.p. 46); while in a disability report, Plaintiff stated she stopped working because her husband did not want her traveling on the highway. (R.p. 151).



This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. Based on the record and evidence, the undersigned does not find that the ALJ conducted an improper credibility analysis in reading her conclusions, or that the decision otherwise reflects a failure to properly consder the record and evidence in this case. Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984) ["[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." (citation omitted)]; see also Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]. Therefore, Plaintiff's credibility argument is without merit.

## IV.

### (RFC)

Plaintiff also contends that the ALJ erred in evaluating her RFC because she failed to perform a function-by-function comparison of Plaintiff's past relevant work with the RFC as required by SSR 82-62; failed to allow reasonable cross-examination regarding composite jobs (discussed below) which prejudiced the function-by-function evaluation of Plaintiff's past relevant work; and



failed to consider Plaintiff's macular degeneration, psychological problems, diabetes, and foot problems which "severely prejudiced the evaluation of past relevant work as it relates to how the ALJ came up with her RFC evaluation." ECF No. 13 at 25-27.

RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). In SSR 96-8p, RFC is defined as a function-by-function assessment of an individual's physical and mental capacities to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours per day, five days per week, or the equivalent. SSR 96-8p, 1996 WL 374184. An RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations);" Id. at *7; and "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013).

Here, the ALJ included a narrative discussion of the medical and nonmedical evidence to conclude that Plaintiff had the RFC to perform a range of sedentary work, specifically addressing each of Plaintiff's impairments. (R.pp. 17-22). In doing so, the ALJ specifically explained why she did not credit the contradictory evidence in the record including Dr. Gajewski's August 2012 opinion. Lyall v. Chater, No. 94-2395, 1995 WL 417654 at * 1 (4th Cir. 1995)[Finding no error where the ALJ's analysis "was sufficiently comprehensive as to permit appellate review"]. Objective testing supports the ALJ's conclusions that although Plaintiff's back and other impairments limited her to sedentary work, they did not prevent her from performing all work. Additionally, Plaintiff reportedly



had had mental impairments for over twenty years and diabetes for approximately twelve years, but worked despite her impairments, and did not show any significant worsening of such conditions. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)[condition is not disabling if reasonably controlled by medication or treatment]; Orrick, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if she is capable of performing her past relevant work either as she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that she is incapable of performing her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In determining this issue, Social Security Ruling 82-62 requires the ALJ to determine the following when evaluating whether a claimant can perform her past relevant work:

1. A finding of fact as to the individual's RFC.

2. A finding of fact as to the physical and mental demands of the past job/occupation.

3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4.

The ALJ complied with SSR 82-62 because she made a finding of fact as to Plaintiff's RFC (see R.pp. 17-22), made determinations as to the demands of Plaintiff's past jobs, and determined that the demands of Plaintiff's past relevant work as an order clerk and a complaint clerk (as actually performed by Plaintiff and as generally performed in the economy) and her work as a secretary and purchasing agent (as generally performed in the economy) did not preclude performance



of such work.  In doing so, the ALJ obtained testimony from the VE[7] to determine that Plaintiff's

RFC would permit her past relevant work.  The VE asked Plaintiff questions about her prior

positions; (R.pp. 61-62, 65-67); and then testified that Plaintiff's administrative assistant job was best

defined by the secretarial designation which was unskilled, sedentary work in the national economy;

Plaintiff's work as a purchasing assistant was a composite job consisting of a job as a purchasing

assistant which was sedentary semi-skilled work as performed in the national economy and a tool crib

job which was skilled medium work; and her work as a customer service position at a cabinet

company was a composite job consisting of a customer complaint clerk which was skilled, sedentary

work and an order clerk which was sedentary and semi-skilled.  (R.pp. 63-68).  The VE also

identified the Dictionary of Occupational Titles (DOT)[8]  numbers pertaining to Plaintiff's past

relevant work.  Then, in response to a hypothetical outlining the limitations as found by the ALJ in

her RFC, the VE testified that Plaintiff could perform her past relevant work as an order clerk,

complaint clerk, secretary, and purchasing assistant. (R.p. 74).

        The ALJ accepted this analysis; (R.p. 22); and the undersigned can find no reversible

error in her having done so.  See Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may

rely on VE opinion based on training, experience and familiarity with skills necessary to function in

various jobs]; cf. Ray v. Colvin, No. 12-3307, 2014 WL 1093075, at * 11 (D.S.C. March 17, 2014).

---

        [7]The Commissioner may employ the services of a VE at step four of the sequential evaluation
process to help determine whether a claimant can perform his or her past relevant work.  See 20
C.F.R. § 404.1560.

        [8]The DOT is "a publication of the United States Department of Labor that contains
descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v.
Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).  "[T]he DOT, in its job definition, represents
approximate maximum requirements for each position rather than the range." See Fenton v. Apfel,
149 F.3d 907, 911 (8th Cir. 1998).



Plaintiff's argument that the ALJ failed to properly evaluate her RFC is without merit.    Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd; Knox v. Astrue, 327 Fed.Appx. 652, 657 (7th Cir. 2009)["[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002).

## V.

### (Cross-Examination of VE)

Finally, Plaintiff asserts that the ALJ erred by failing to allow significant cross-examination of the VE by Plaintiff's counsel.  At the hearing, Plaintiff's counsel posed questions about the exertional level of the jobs of secretary and purchasing agent.  He then asked about the composite jobs of a secretary and a purchasing procurement clerk.  The ALJ interrupted to clarify that the secretary position was not a composite job, and Plaintiff's counsel took exception to the ALJ doing so, claiming he was being prevented from cross-examining the VE.  In response to the ALJ's questions, the VE clarified that the secretary position was not combined with any other job and was not considered to be a composite occupation. Additionally, the VE clarified that the way Plaintiff performed the job it was light work, but the DOT listed it as sedentary work. (R.pp. 77-78).  The ALJ would not allow Plaintiff's counsel to combine the secretary job with any other job to ask a question, but clarified that Plaintiff could ask questions as to the individual secretary job, just that he could not ask questions concerning combining it with others, and that Plaintiff's counsel could ask questions

26



about the other jobs which were composite jobs. (R.pp. 78-82). Thereafter, Plaintiff's counsel questioned the VE about Plaintiff's past relevant work and his conclusions. (R.pp. 82-85, 88-89).

The ALJ and the parties, or their designated representatives, may ask witnesses any questions material to the issues. 20 C.F.R. § 416.1450(e). The ALJ must, however, ensure that the hearing is managed efficiently. 20 C.F.R. § 405.320(a). Social Security proceedings are not adversarial and the ALJ has a duty to develop the record, which includes control over the examination of witnesses. "[W]hile '[t]he claimant and the representative have the right to question the VE fully on any pertinent matter within the VE's area of expertise [,] ... the ALJ will determine when they may exercise this right and the appropriateness of any questions asked or answers given.'" Libby v. Astrue, No. 10–292, 2011 WL 2940738, at * 13 (D.Me. July 19, 2011)(quoting Social Security Administration, Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual ("HALLEX") § I–2–6–74(C)).

Although the ALJ interrupted Plaintiff's counsel to clarify information about the secretary position and again when Plaintiff's counsel attempted to ask general questions about whether obesity and age were negative vocational factors (R.p. 84-85), Plaintiff's counsel proceeded to ask the VE questions thereafter. Review of the hearing transcript indicates that Plaintiff's counsel was able to effectively question the VE and pose hypotheticals. He zealously and competently represented his client. Further, even if there was any error as to the VE's testimony and the ALJ's conclusions concerning Plaintiff's past relevant work as a secretary, any such error is harmless as the ALJ found that Plaintiff could perform other past relevant work.



## **Conclusion**

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 8, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

